# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**SYLVIA A. WILLIAMS,**

    **Plaintiff,**

                                  **Civil Action 2:17-cv-831**
                                  **Judge Michael H. Watson**
**v.**                            **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Sylvia A. Williams ("Plaintiff"), brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits, period of disability benefits, and supplemental security income benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 15), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

On October 17, 2011, Administrative Law Judge John Robert Montgomery found that Plaintiff was disabled from July 27, 2006, through March 10, 2009, but not thereafter. Plaintiff subsequently filed her current applications for a period of disability, disability insurance benefits,

and supplemental security income on June 16, 2014. In her applications, Plaintiff alleged a disability onset of July 27, 2006.[1] Plaintiff's applications were denied initially on August 29, 2014, and upon reconsideration on October 30, 2014. Plaintiff sought a hearing before an administrative law judge. Administrative Law Judge Timothy Gates ("ALJ") held a hearing on June 14, 2016, at which Plaintiff, represented by counsel, appeared and testified. Lynne M. Kaufman, a vocational expert ("VE"), also appeared and testified at the hearing. On July 18, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On July 27, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff contends that the ALJ erred in his consideration and weighing of the medical opinions in the record. According to Plaintiff, the ALJ failed to properly consider Dr. Gregory Figg's opinion under the treating physician rule, and improperly weighed the opinions of Plaintiff's treating chiropractor, Dr. Michael Novak. Specifically, Plaintiff argues that the ALJ's determinations are not supported by substantial evidence and that the ALJ failed to give good reasons for discrediting Dr. Figg's opinion. In Plaintiff's view, "[b]ecause the ALJ discredited the state agency physician's opinions, the opinions of the treating physician and the treating chiropractor remain uncontradicted." (Statement of Errors 6, ECF No. 11.)

---

[1] At the hearing, Plaintiff amended her alleged disability onset date to December 14, 2012.

## II.  HEARING TESTIMONY

**A.** **Plaintiff's Testimony**

At the administrative hearing, Plaintiff testified that she currently lives with her husband, who generally does the driving and household chores.  (R. at 57-58, 62.)  Plaintiff testified further, however, that she has a current driver's license and drove approximately 45 minutes to an hour to the hearing, but that she rarely drives otherwise.  (R. at 57.)  When the ALJ asked Plaintiff why she cannot work, Plaintiff responded that cannot lift more than ten pounds, cannot walk long distances, and generally cannot sit for more than fifteen minutes at a time.  (R. at 60, 63.)  Plaintiff further stated that she is limited by her pain, which averages an eight out of ten. (R. at 60-61.)

Plaintiff also testified that she attended Central Ohio Technical College from the fall of 2012 through the spring of 2015, although she finished "six credits shy" of graduation.  (R. at 58.)   When questioned by her attorney, Plaintiff testified that she interned with the Red Cross during her last two semesters at Central Ohio Technical College, where she worked approximately three hours per day.  (R. at 68.)  Plaintiff explained, however, that she "couldn't even get through those [hours] without pain," and that she "had to lay down immediately" when she got home from the internship.  (*Id.*)

**B.** **Vocational Expert Testimony**

The VE testified at the administrative hearing that Plaintiff's past relevant work was home attendant, a semi-skilled, medium strength position.  (R. at 70.)  The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, and vocational profile who

3

retained the residual functional capacity ("RFC")[2] that the ALJ ultimately assessed. The VE opined that such an individual could not perform Plaintiff's past work. (R. at 71, 73.) The VE then testified that the hypothetical individual could, however, perform approximately 276,000 sedentary, unskilled jobs in the national economy (approximately 14,000 jobs locally) such as inspector, order clerk, and assembler. (R. at 71, 73.) In response to questioning by Plaintiff's counsel, the VE stated that if Plaintiff were to miss three to five days of work per month, she could not sustain competitive employment. (R. at 73.)

### III. RELEVANT RECORD EVIDENCE

**A.     Gregory Figg, M.D.**

On April 27, 2015, Dr. Figg completed a Medical Source Statement, detailing Plaintiff's alleged functional limitations. (R. at 498-500.) In his Statement, Dr. Figg opined that Plaintiff had the following limitations: can occasionally lift up to ten pounds, but never lift more than ten pounds; can constantly reach, handle, or finger with upper extremities; can stand for up to four hours, but not more thirty minutes at a time; can walk for up to one hour, but not more than fifteen minutes at a time; can sit for up to eight hours, but not more than thirty minutes at a time; cannot use feet for repetitive movements as in operating foot controls; can climb steps, but cannot bend, squat, crawl, or climb ladders; and can reach above shoulder level. (R. at 498-99.) Dr. Figg further opined that Plaintiff's condition would deteriorate if placed under the stress of employment and that she would likely miss more than five days of work per month. (R. at 500.) Lastly, Dr. Figg indicated that Plaintiff's restrictions date back to October 18, 2011. (*Id.*)

---

[2]A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

B.  **Michael Novak, D.C.**

On September 3, 2015, Dr. Novak completed a Medical Source Statement. (R. at 503-04.) In his statement, Dr. Novak opined that Plaintiff had the following limitations: can stand for less than one hour, but not more five to ten minutes at a time; can walk for less than a half-hour, but not more than five minutes at a time; sit for three to six hours, but not more than thirty minutes at a time; rarely lift up to ten pounds; use hands for simple grasping and fine manipulation, but not for pushing and pulling; cannot use feet for repetitive movements as in operating foot controls; never bend, squat, stoop, crawl, climb steps, or climb ladders; and can reach above shoulder level. (*Id.*) Dr. Novak further opined that Plaintiff's condition would deteriorate if placed under the stress of employment and that she would likely miss more than five days of work per month. (R. at 504.) Lastly, Dr. Novak indicated that Plaintiff's restrictions date back to October 10, 2011. (*Id.*)

B.  **State Agency Evaluations**

On August 29, 2014, Diane Manos, M.D., reviewed the record and assessed Plaintiff's physical functioning capacity. Dr. Manos opined that there was no material change in Plaintiff's medical record and, therefore, adopted the residual functional capacity as assessed in the October 17, 2011 Decision. (R. at 94. *See also* R. at 86 (October 2011 RFC finding that Plaintiff had the "residual function capacity to perform the full range of sedentary work").) On October 30, 2014, Michael Delphia, M.D., reviewed the record upon reconsideration and affirmed Dr. Manos's assessment. (R. at 114-15.)

## IV.  THE ADMINISTRATIVE DECISION

On July 18, 2016, the ALJ issued his decision. (R. at 30-47.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 14, 2012, the amended alleged onset date. (R. at 35.)) The ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the spine, status post lumbar fusion surgery, and obesity. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant could occasionally perform all postural maneuvers, with the further exception that the claimant could never crawl and could never climb ladders, ropes, or scaffolds.

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(R. at 36 (footnote omitted)).) In reaching this determination, the ALJ followed a two-step process. First, the ALJ found that "[a]fter careful consideration of the evidence, . . . [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 37.) Second, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

In calculating Plaintiff's RFC, the ALJ relied on the opinions of Drs. Figg and Novak, as well as the state agency physicians, Drs. Manos and Delphia. The ALJ assigned "some weight" to the opinion from Plaintiff's treating physician, Dr. Figg, finding that "[h]is statements were somewhat consistent with the evidence of record." (R. at 44.) The ALJ assigned "no more than some weight" to the opinion from Plaintiff's treating chiropractor, Dr. Novak, finding that he is considered an "unacceptable medical source" and that the opined limitations are only partially consistent with the record. (R. at 44.) The ALJ assigned "little weight" to the state agency reviewing physicians, concluding that "new and material evidence warranted a slightly more restrictive functional capacity and as a result a deviation from the prior ALJ decision" the physicians had adopted. (R. at 45.)

Relying on the VE's testimony, the ALJ found that even though Plaintiff is unable to perform her past work, she can perform jobs that exist in significant numbers in the national economy. (R. at 46-47.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 47.)

7

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff contends that the ALJ improperly weighed the medical source opinions in the record. Specifically, Plaintiff argues that the ALJ (1) failed to provide good reasons for discrediting the opinion of treating physician Dr. Figg and (2) failed to properly evaluate the opinions of treating chiropractor Dr. Novak. The undersigned finds these arguments unpersuasive.

**A.     Weight Assigned to the Medical Source Opinions**

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis." 20 C.F.R. § 416.927(a)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

### 1. Dr. Figg's Opinion

As discussed above, the ALJ assigned some weight to Dr. Figg's opinions as Plaintiff's treating physician in his Medical Source Statement. Although Plaintiff maintains that the ALJ failed to give good reasons for the weight assigned, the undersigned notes that the ALJ provided a lengthy discussion of how he arrived at his determination. In discussing Dr. Figg's opinions, the ALJ stated as follows:

> The undersigned affords some weight to the opinion of Dr. Figg, evidenced at Exhibit B11F. Dr. Figg indicated the claimant could lift and carry up to 10 pounds, would be limited in her ability to stand, sit, and walk, could not use her feet for repetitive movements, would be precluded from postural activities, except the

occasional climbing of stairs, could reach overhead and use her hands and arms for tasks, and would like[ly] deteriorate under stress. It should be noted the physical functional form was prefilled noting the claimant's conditions would date back to October 2011 and Dr. Figg checked a box to agree with such statement. Further, he also merely checked a box to agree with a prefilled statement that the claimant would miss approximately five or more days of work per month due to her combination of conditions and symptoms. The undersigned affords some weight to the limitations noting the claimant would be limited to lifting and carrying up to 10 pounds, as such limitations are consistent with the requirements of sedentary exertional level work. The undersigned finds the claimant would be limited in her ability to stand and walk, as a result of her spinal degeneration and obesity; however, the undersigned finds the record does not objectively support the limitations outlined by Dr. Figg, as the record indicates the claimant was able to engage in these activities longer when she was performing her activities of daily living, such as driving, attending class, shopping, and performing household chores. While the medical evidence in the record begins in October 2011, such emergency room notes were unrelated to any of the alleged conditions and as such, the claimant's alleged conditions do not relate back to such a time. Further, the record does not support the claimant would miss five or more days a month related to her treatment. She did not seek out treatment or emergency room visits five or more days per month. Additionally, the record indicated her medications and spinal injections were noted to provide medical benefit and a reduction in her symptoms. The undersigned gives greater weight to the lack of limitation on the use of her upper extremities and reaching overhead, as the record supports no upper extremity impairment. The undersigned gives less weight to the preclusion of most postural limitations, as the undersigned finds the record supports a less restrictive limitation on most postural activities, with the exception of crawling and climbing ladders, ropes, and scaffolds. It should be noted the claimant remained able to complete transfers from sitting to standing and lying throughout the record without assistance and she was never prescribed any ambulatory aid. Further, the record supports no other invasive treatment modalities, such as her conditions requiring a subsequent surgical intervention. Dr. Figg was the claimant's treating physician and [was] able to observe the claimant on several occasions, becoming familiar with her conditions and symptoms, as well as her response to treatment. His statements were somewhat consistent with the evidence of record and as such, the undersigned provides his opinion overall some weight.

(R. at 43-44.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Figg's opinions. The ALJ articulated the weight he afforded Dr. Figg's opinions, and properly declined

to afford them controlling weight on the grounds they lacked support and were only somewhat consistent with the record. *See* 20 C.F.R. § 404.1527(c)(2) (identifying "supportability" and "consistency" with the record as a whole as relevant considerations); *Blakely*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)) ("'[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent with the other substantial evidence in the case record.'").

First, the ALJ reasonably discounted Dr. Figg's opinions that Plaintiff's conditions would relate back to October 2011 and that she would miss work five or more days of work per month. Although the ALJ did note that the opinions were simply checked boxes, he did not discredit them because of their form. Rather, the ALJ concluded that the opinions were not supported by the medical evidence in the record. (*See, e.g.*, R. at 43 ("[T]he record does not support the claimant would miss five or more days a month related to her treatment.").) Importantly, "the issue is not whether the treating source expresses an opinion in narrative or check-box form, but whether that opinion is—as the regulations plainly state—otherwise 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Stancato v. Comm'r of Soc. Sec.*, No. 5:13 CV 1519, 2014 WL 4792560, at *6 (N.D. Ohio Sept. 24, 2014) (citing *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014)). *See also Ellars v. Colvin*, No. 1:14-cv-2050, 2015 WL 4538392, at *2 (July 27, 2015) (citing *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439–41 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470–72 (6th Cir. 2006) ("An ALJ may accomplish the goals of the 'good reasons' requirement by indirectly attacking the supportability

of the treating physician's opinion . . . ."). Here, the record supports the ALJ's findings. As the ALJ indicated, there is no evidence in the record dating back to October 2011 relating to Plaintiff's alleged conditions and symptoms. (*See* R. at 451 (record from October 17, 2011 emergency room visit for sore throat, nasal congestion, and cough, showing normal results of physical exam).) Additionally, the record reflects that the effects of Plaintiff's conditions are reduced by her current treatment, (*See, e.g.*, R. at 519 ("[T]he patient was given a refill of her medication which has been appropriate and helpful."); R. at 526 ("The epidural injection that Dr. Figg performed was beneficial and so the patient is hoping to be able to have a second injection.")), and there is no indication in the record that Plaintiff required treatment five or more times per month. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir. 2016) (citations omitted) (identifying conservative treatment as good reason for discrediting opinion of treating physician). Moreover, there is no apparent evidence in the record reflecting a basis for Dr. Figg's conclusion that Plaintiff would miss five or more days of work per month. Thus, the undersigned finds that the lack of support in the record for Dr. Figg's opinions constitutes good reason to discredit them.

Next, in weighing Dr. Figg's opinions, the ALJ pointed to Plaintiff's activities of daily living and her ability to effectively ambulate without assistance during emergency treatments. Inconsistency with a claimant's reported activities of daily living constitutes good reason to discredit a treating physician's opinions. *See Hummel v. Comm'r of Soc. Sec.*, No. 2:16-cv-937, 2018 WL 1373869, at *3 (S.D. Ohio Mar. 19, 2018) (finding inconsistency with record evidence, including activities of daily living constitutes good reason to discredit treating physician's

14

opinion). In this case, the record reflects that Plaintiff can cook and wash dishes (R. at 288 (adding that standing and bending are limited)); can shop for groceries (*Id.*); can drive and use public transportation (R. at 57, 289); and successfully attended school for approximately two years during her alleged disability period (R. at 58). Moreover, the ALJ reasonably considered that Dr. Figg's restrictive opinions are inconsistent with Plaintiff's documented ability to effectively ambulate without assistance, even when seeking emergency treatment. (*See, e.g.*, R. at 336, 349, 356, 385 (reflecting a score of "0" on the Morse Fall Scale and noting Plaintiff's ability to ambulate unassisted).) The undersigned finds Plaintiff's reported activities of daily living and ability to effectively ambulate during emergency treatment are inconsistent with Dr. Figg's opined limitations and constitute good reasons for discrediting his opinion.

Finally, with respect to postural limitations, the ALJ reasonably found that the record supported less restrictive limitations than those opined by Dr. Figg. In discrediting the opined postural limitations, the ALJ relied on Plaintiff's ability to ambulate during treatment, her lack of any prescribed or medically necessary assistive device or ambulatory aid, and the fact that she has not undergone any additional invasive treatments following her L5–S1 fusion in 2007. As discussed above, inconsistency with the record constitutes good reason for discrediting a treating physician's opinion. *See Blakely*, 581 F.3d at 406. Additionally, lack of an ambulatory aid constitutes good reason to discredit a treating physician's opinion. *See Bailey v. Comm'r of Soc. Sec.*, No. 4:17-cv-11929, 2018 WL 3284449, at *10 (E.D. Mich. Mar. 26, 2018) (finding lack of ambulatory aid to be good reason to discredit opinion from treating physician). In this case, the record supports the ALJ's findings. The ability to ambulate unassisted during treatment supports

15

the ALJ's conclusion that Plaintiff is less limited than Dr. Figg opined. Moreover, the lack of an ambulatory aid indicates that Plaintiff is not as functionally limited in her lower extremities as opined by Dr. Figg. Finally, the undersigned is persuaded that Plaintiff's stability in treatment, reflected in the lack of increasingly invasive treatments, in combination with Plaintiff's activities and lack of assistive device constitutes good reason to discredit Dr. Figg's opinion. *Locher v. Comm'r of Soc. Sec.*, No. 3:11-cv-412, 2013 WL 459200, at *10 (S.D. Ohio Feb. 7, 2013) (finding stability of symptoms with treatment, activities of daily living, and documented abilities constitute good reason to discredit treating physician's opinion).

In sum, the undersigned concludes that the ALJ provided good reasons for assigning only some weight to Dr. Figg's opinions, and that his assessment is supported by substantial evidence in the record. Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

### 2. Dr. Novak's Opinions

As set forth above, regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. In addition, the regulations provide that where, as here, the ALJ does not assign controlling weight to the claimant's treating physician, he or she must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do

16

for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(e)(2)(ii).

Plaintiff asserts that the ALJ erred in discrediting Dr. Novak's opinions in his Medical Source Statement based on the conclusion that they were not entirely consistent with the record as a whole. Specifically, Plaintiff argues that the ALJ erred in identifying straight leg tests as subjective tests and in relying on her "relatively normal" gait and lack of an assistive device for ambulation. The record, however, supports the ALJ's findings.

At the outset, the undersigned acknowledges that Plaintiff correctly points out that the ALJ erred in finding that "[t]he record supports no limitation on the claimant's ability to engage in lifting or carrying objects." (R. at 44.) Notably, this finding directly contradicts The ALJ's conclusion that Plaintiff is limited to sedentary work. As discussed below, however, the ALJ correctly applied the § 416.927(c) factors and the record otherwise supports his consideration and weighing of the medical source opinions. Moreover, as Plaintiff acknowledges, "every medical source of record, including the state agency medical consultants, opined that Ms. Williams was limited to sedentary work." (Statement of Errors 13, ECF No. 11.) The ALJ's error, therefore, constitutes only harmless error. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007) (citing 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) ("This court will uphold the Commissioner's decision if it is supported by substantial evidence and if the Commissioner applied the correct legal criteria.").

In discrediting Dr. Novak's opinion, the ALJ properly applied the § 416.927(c) factors. In the decision, the ALJ explained as follows:

17

> First, while he was a treating source and able to observe the claimant on some occasions, Dr. Novak was a chiropractor and considered an unacceptable medical source under the Social Security Rules and Regulations. Despite being an unacceptable source, his statements are not entirely consistent with the evidence of record. . . .
>
> It should be noted the undersigned has read and considered the provided professional qualifications . . . in conjunction with the provided opinion statements made by the claimant's treating physicians . . . .

(R. at 44-45 (citations to exhibits omitted).) Further, the ALJ adequately discussed the record evidence that was inconsistent with Dr. Novak's opinions. First, the ALJ reasonably relied on negative EMG nerve conduction testing which reflected no "new/recurrent lumbar radiculopathy, inflammatory myopathy, or underlying sensory/motor peripheral neuropathy." (R. at 304-05.) Next, the ALJ pointed to Plaintiff's reported daily activities, including her ability to drive a vehicle, which reflects a greater ability to use foot controls than opined. (*See* R. at 289.) Finally, the ALJ noted that there is no record that Plaintiff was ever prescribed an ambulatory aid or other assistive device. *See Bailey*, 2018 WL 3284449 at *10 (finding lack of ambulatory aid to be good reason to discredit medical source opinion). In aggregate, the lack of objective evidence, Plaintiff's reported activities of daily living, and the lack of an assistive device support a finding that Plaintiff is less limited than Dr. Novak opined. Importantly, the relevant inquiry is whether substantial evidence supports the ALJ's findings, not whether there is also substantial evidence of disability. Thus, even if Plaintiff's arguments regarding the ALJ's reliance on the subjectivity of straight leg tests were well taken, the undersigned concludes that ALJ properly relied on other evidence in his determination that Dr. Novak's opinion was not consistent with the record. *See* 20 C.F.R. § 416.927(c).

In sum, the undersigned, finds that the ALJ did not err in his consideration and weighing of Dr. Novak's opinions. Accordingly, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## VII.  DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                /s/ *Chelsey M. Vascura*
                                                CHELSEY M. VASCURA
                                                UNITED STATES MAGISTRATE JUDGE